The next case this morning is 523-0650, People v. Miles. Arguing for the appellant is Amelia Carroll. Arguing for the applee is Justin Nicolosi. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, counselors. Good morning. Good morning. If, uh, Ms. Carroll, if you're prepared to begin, you may do so now. Good morning. May it please the court. Counsel, I'm Amelia Carroll on behalf of Mr. Anthony Miles. And while I'm pleased to answer questions today about the first two issues raised on appeal, reasonable doubt, and prosecutorial misconduct, I'm going to be focusing today's argument on the third issue of ineffective assistance of trial counsel, as that issue really incorporates the two. The state's case against Mr. Miles for all three charges was entirely circumstantial. The guns and drugs found on November 10, 2020, were found in a yard that was not his, behind a house that was not his, and across from a house that had been shot up that was not his. None of the several witnesses at or near Ridgewood Court at the time that Mr. Miles was supposedly there saw Mr. Miles on that day or any other day. The state's entire case for all three charges rested on a theory that a person wearing black clothing who was walking between the houses shortly after the police arrived, that was captured on Officer Griffith's squad camera footage, was Mr. Miles. But that video footage is grainy, as conceded by the state, and not even Detective Carpenter, who knew Mr. Miles previously, could look at that footage and say that that looked like Mr. Miles. So to prove its case, the state sought to stitch together three disparate pieces of inconclusive circumstantial evidence using unreasonable inferences that capitalize on defense counsel's ineffectiveness in order to make a stronger case as to identity than it actually had. But even if this court were to find that the state's inferences fell within its latitude for argument, it was defense counsel's deficient performance that enabled the state to distort the strength of its evidence. And as the evidence in this case was incredibly closely balanced, defense counsel's deficiencies were what tipped it over unfairly into what was ultimately an unreliable verdict. So counsel's ineffectiveness included, first, failing to competently handle the evidence of the car registered to Mr. Miles. Second, failure to ensure that the video footage and the booking photo went back with the jury during deliberations. And third, calling a harmful defense witness. So first, regarding the car that was registered to Mr. Miles, competent counsel would have avoided eliciting that the car was being investigated for its potential involvement in a shooting and also would have objected to Officer Rice's testimony altogether. Defense counsel made several choices here that amounted to ineffectiveness, but chiefly it was on cross-examination, counsel elicited from Officer Rice that the car was being investigated for its possible involvement in a shooting. Before that, the state elicited that the car was there found registered to Mr. Miles on August 25th, 2020, three months before the incident relevant for this case, November 10th, 2020. He also had elicited that the car was in a burned-out condition. We didn't hear how the car got there, who brought it there, what burned-out condition means. We no sound strategy that the car was being investigated for its possible involvement in a shooting, which then we never find out that the car was actually involved in a shooting. So it's irrelevant, it's hearsay, it's speculation, and it's prejudicial. And it allows the state to connect to its unsupported theme that Mr. Miles is a drug dealer who's more likely to be person wearing black in this grainy video footage. We don't hear the defense counsel coming back to that in closing argument and using that testimony in any way, which also reveals that there was no sound strategy here, and it helped distort the strength of the state's case. The prosecutor said in closing, people who have their cars burned out in front of houses where guns and drugs are found, that's what drug dealers do. The state on appeal conceded that saying that was probably painting with too broad of a brush. But the reason why the state was able to even make that argument where they painted with too broad of a brush was because defense counsel elicited that prejudicial testimony that revealed no sound strategy. Furthermore, competent counsel would have sought to exclude Officer Rice's testimony altogether. Without more information about how that car ended up there, why it was in that state, the car's presence there is not relevant. Even if this court were to find that it did bear some relevance, it's not relevant that the car was in a burned out condition, especially because we don't know what that means, and it casts a negative light on Mr. Miles without having a clear connection to this case at all. So there should have been a about the car at all, and there wasn't. And furthermore, there should have been a limiting instruction so that the jury would understand how it was supposed to interpret that information fairly. Without that, you have these pieces of information that the state is presenting that then they pick up to make their argument where they're distorting their case. As to prejudice, identification evidence in this case came down to three things. The grainy video footage, the DNA, which did not pin Mr. Miles to being at Ridgewood Court on November 10th, and this car. The car is used throughout the state's closing, and it's significant because the state has to grab onto it in order to strengthen the weakness of its circumstantial evidence. As to identity, as we know, for Strickland, a reasonable probability as to a different outcome can be well below a 50% probability. We have a reasonable probability here that without that piece of the car evidence for the jury that it likely would have been a different outcome if they only had the DNA evidence and this grainy video footage to rely on their case. Which brings me to the next issue of defense counsel's ineffectiveness, which was its failure to ensure that the video footage and the booking photo was sent back to the jury during deliberations. Here, as discussed, the video footage is so grainy that Detective Carpenter can't even say that the person in the footage is Mr. Miles. With regard to the DNA evidence that the forensic analyst found, one of the five guns in the yard had DNA of at least three DNA profiles on it. One of those three DNA profiles on one of those five guns has 13 out of 23 loci consistent with Mr. Miles, which does make him a possible contributor. Now, even if the jury found that that was Mr. Miles' DNA, we don't know how that DNA got on there and we don't know when, as DNA can be on an item for up to six weeks. So the DNA doesn't pin Mr. Miles to being on Ridgewood Court on November 10th. And as we already discussed, the car doesn't either. So we're left with the video footage, which, if reliable, is the only evidence that could directly place Mr. Miles on Ridgewood Court on November 10th. And the reason why we know that's significant to the outcome of the case is that the jury asks a question. They say, is the scope of the charge, armed habitual criminal, limited to possession of a firearm on November 10th, 2020, or any date leading up to November 10th? Must the state prove possession on that date? So here, the jury question showed that it was struggling with the state's ability to prove possession on the relevant day of November 10th, which means they're acknowledging the limitations of the DNA and the car evidence there, which meant that its ability to assess whether or not the state's claims about what the video footage showed was critical. The state made a number of claims, as discussed in issue two of the defense brief, about what that video footage showed. And we argue that those statements were unreasonable, especially given that Detective Carpenter could not say that that was Mr. Miles. But the state says it's okay that Detective Carpenter didn't say that that was Mr. Miles, because it's up to the jury to look at the video footage and the booking photo and determine if that's the same person. Yet the state doesn't ask for the video wanted to show that Mr. Miles had been in the area and had been there before as an explanation of the DNA for the gun. I mean, couldn't that have been a trial strategy? It could have been a trial strategy. However, not every strategy is a sound strategy, especially because we didn't hear defense counsel actually make that argument in its closing. We know that there was no real sound strategy to eliciting that. And rather, it gave the state the opportunity to double down on this assertion that Mr. Miles was a person who is regularly drug dealing because drug dealers have their cars in that kind of estate in front of these houses. So while it's possible that there could have been a thought there, it wasn't sound and we don't see it bear out in the actual argument. So it just ends up being harmful to Mr. Miles. So with regard to this video footage, because defense counsel acquiesces to the state saying, we're not going to send back that video footage, we don't want the video footage to go back. The problem is that the jury is not able to actually test whether or not the inferences that the state makes about what the video shows is reasonable. And since the video footage, if reliable, is the only evidence that actually shows that Mr. Miles was there on the day, the prejudice here goes to the heart of the case. Because if Mr. Miles is not that person, then he's not guilty on all charges. May I conclude? Yes. So in this incredibly closely balanced case, where the jury indicated its concern that the state could prove that Mr. Miles possessed any contraband on the day in question, it was defense counsel's ineffectiveness that unfairly tipped the scales here, rendering ultimately an unreliable verdict that requires a new trial. Thank you. Okay. Justice Scholar, do you have any questions? No questions. Justice Welch? No questions. And I apologize, counselors, I meant to inform you that Justice Welch is not on screen on his picture or video. He's having some difficulty with that, but he is participating. Obviously, you heard him there. He's listening to the arguments and can participate orally. So please don't be alarmed that his picture is not present with us today. Okay, Ms. Carroll, you'll have five minutes in rebuttal. Mr. Nicolosi, are you prepared to begin? Yes, your honor. All right, you may do so. Good morning, your honors. May it please the court. And Ms. Carroll, my name is Justin Nicolosi. I represent the state of Illinois in this case. The state would, as it did in its brief, it acknowledges that this case is largely circumstantial. But I would submit it's not entirely circumstantial. There was, of course, the DNA that testimony established the defendant was not excluded from having been a contributor, giving that incredible one in 53 quintillion people would, unrelated individuals would be attributed to that particular sample that was found on the gun that was behind the thousand three Ridgewood. But the state submits that the case was tied together with several circumstantial evidence that the state submits was stronger than the defense is giving it credit. First of all, of course, there's the car that was investigated in August that year. I was tied to defendant. That was a relevant piece of evidence that would have been admitted, even if defense counsel would have objected or evidence is relevant. If it's more, if it's likely to make a fact in question more or less probable than it, more or less likely than it would have been if that evidence was not admitted. Obviously, it's that I am defendant that area with his vehicle parked out in front is relevant evidence. The state submits that that would have been admitted, even had defense counsel objected. So the state submits, that's makes it more likely that it was defendant. In fact, on November 10th, the one in the black clothing that has seen Miss Connor saw with the man in gray, leaving thousand two Ridgewood shortly after shooting. The gray man, of course, had a long rifle. Connor didn't see the man in black with any contraband that was visible. It's amidst that the video while grainy does clearly show a man who's walking with one arm swinging. The other arm is around his belt. There's simply no question about that. The state submits that based on that observation, Jeter was entirely reasonable in inferring that it was the defendant. A man in black was carrying at least some of these guns and the haphazardly packaged cocaine that was found behind 3003, where these men were going and where they disappeared behind was found later by officers. The picture, oh, that it was, again, I'll use the word haphazardly. Again, it was concealed very haphazardly with pieces of and, and it was in the leaves. It was not, it clearly was the, it was the items that were carried across the street following the shooting. These men were just in this house that was just shot up. They knew that police were going to be on their way. They were going to investigate, they had to get the cocaine, which testimony established was too much for burst. That was for, for sale. They clearly didn't even have time to package it. They put it in a measuring cup with ale. They rushed across the street because they knew that police were going to be in the area momentarily. Didn't have time to do it. These men were clearly working together. The accountability issue is not an issue in this case. And then, so then afterwards, after the officer by the man in black came out of the house from the back of the house, did not come out through a door to the across the street moment. And it's yeah, they can't dispute the fact that the video was of, of mediocre quality with the booking photo. That was, is the court able to hear me? I just, I see a message on my screen that my internet connection was unstable. Yes, you've, you've been, we've been able to hear you the entire time. Okay, great. So the, the video that was able to look at the face of pendant as shown in his booking and was able to argue that the, the man in the black who gets in the Toyota was the defendant state submits. It's certainly reasonable that the prosecutor was able to make those comparisons and an officer testified that the vehicle in question was a Toyota that was approximately five foot seven or five foot eight tall. And that the defendant was five, seven, his PSI indicates he was five, seven of the state to myth that, yes, there was lots of circumstantial evidence in this case. But the state submits that the prosecutor tied the case up with reasonable inferences based on all of that evidence or leads to the conclusion that the defendant was the man and man in gray, take all of this kind of hide it across the street. I've counseled us talking about the ineffectiveness of trial counsel. That's the issue regarding again, the officer Rice's testimony regarding the car in August, the statements that would have been admitted based on relevancy, the failure to object to the prosecutor's arguments. There, there are lots of arguments that defendant made an issue to about prosecutor, namely about making arguments that defendant was a drug dealer, that the house at three, the 3,002 Ridgewood was a drug house. Counsel made arguments about a defendant as a babysitter, as, as if the prosecutor used that term pejoratively, the state would submit starting off that, that there was evidence in this case, the defendant was a drug dealer, making the prosecutor's influence in our inference and argument reasonable. Again, that that cocaine was ablished to have been not for personal use. Therefore, the people who had together with this $5,000, it was reasonable to argue that they were, that they were going to sell that cocaine. And because they ran out of the house that had a judgment, just been shot up, the state submits, the prosecutor was reasonable in arguing that that was a, you know, if, if there's cocaine that's for sale in a house, it's not overly prejudicial to argue that that is a drug house and the people that drugs are drug dealers. Regarding the evidence that, or the, the argument that the defendant was a babysitter and that that was to kind of undermine his, him or his racial status or anything like that, the state would submit, there's just simply nothing in the record that, that support that argument that the defense made on appeal. It, it, it was argued that the defendant did babysit his kids based on mother's, not babysit, the defendant watched his kids based on the mother's testimony. And this, the, the prosecutor was simply kind of having a counterpoint between somebody who was watching their kids where the mother testified, that's what he was doing that day versus being a drug dealer and somebody who was, you know, hiding contraband instead of watching. The state submits again, the fact that the circumstantial evidence points to the defendant as being that person, the state was able to argue that he was not watching his kids that day. So the state submits that regarding the prejudice prong of a strict analysis, referring to ineffective assistance, that the evidence again was very strong, despite being largely circumstantial. And so any, any issues with counsel, you know, not objecting to officer Rice or, or Amy Webb, the mother of defendant's children objecting to her testimony. Again, as I argued in my brief, the state argues that counsel would have been ineffective if he didn't call Amy Webb. She, she wrote a letter and submitted it to the court. Saying that the defendant was watching her kids that day. State argues if, if counsel didn't present that witness, defendant on appeal would have been able to argue, hey, this is what I was doing. I had an alibi witness and counsel did not call that witness. This, Ms. Webb didn't turn out to be overly strong for the defense. That's, that's not necessarily counsel's fault. Counsel needed to present an alibi witness and would have argued to have been ineffective if he, or I don't remember if counsel was, or she did not present that witness at trial. Well, the state submits that, you know, again, largely referring to my brief for all the arguments, the state submits that referring to Ms. Carroll's arguments in particular, that counsel was not ineffective in this case. And the state submits that the evidence was strong enough to sustain the jury's verdict on a reasonable basis. If there are any other questions, I'd be happy. Ms. Schiller? No questions. Ms. Welch? No questions. Okay. All right. Thank you. Ms. Carroll, you have time in rebuttal. Thank you. I will largely address some of the points made by counsel regarding the evidence of identity in this case, and then also touch on the argument with regard to putting on Ms. Webb as a witness for the defense. I'll point out that while the state is able to make an argument regarding the relevance of the existence of the car, we don't concede that the existence of the car three months before this incident is relevant because of, as my argument previously, we don't have enough additional information about Mr. Miles' actual presence that would actually make a fact of consequence in this case more or less likely. However, even if this court were to find that that is relevant, the state does not have an answer for how it being in a burned-out condition, which the state elicited, was relevant and how we deal with the fact that that was also prejudicial. And it also doesn't have an argument for how the evidence that this was being investigated for its potential involvement in a shooting, which is what defense counsel elicited, there's no answer to why that was relevant because it's not relevant and it was also extremely harmful to Mr. Miles. So that, again, strengthens our argument that this was ineffective assistance that went to the heart of the case here that makes this verdict unreliable as it was extremely important to the state to bring up the car and to make the argument using defense counsel's error. Furthermore, when it comes to the surveillance footage going that Tara Conner spoke to that's from her office building where you see the two people running from the house that had been shot up 3002 across to the towards the backyard, that is such grainy and far away footage that it's really not even clear. Much detail at all is not clear and the state did argue in closing that you see the arms of the person wearing black that look like there's something being carried by that person. I mean, that also is a real stretch there. And furthermore, we don't even know, no one identified who the person wearing black was in that footage. And it's not even clear that that person was the same person who we see later on Officer Griffith's footage because we don't see that area of the backyard and we don't know who is going in and out of that yard. Furthermore, when it comes to the booking photo comparisons and the height, the booking photo has tons of limitations including that you don't see a profile view, you don't see a full body, we don't see what that person in the booking photo looked like with a hat. These are all things that make the comparisons that the state makes with the video footage very much a stretch. And again, this reinforces the argument that it was critical that the jury have access to the video footage so that they could test whether or not what the state was saying was actually reasonable. Furthermore, again, the state is alleging that this car that pulls up is between five foot eight or five foot seven, five foot eight. I mean, Detective Carpenter guesses that this car is five foot five and a half to five foot seven. The state uses that to say, see, it's obvious that that is Mr. Miles because he stands at five seven and they're asking the jury to approximate these heights. Again, the jury should have had the opportunity to scrutinize that video footage because as it stands, the last time that the jury was processing information about that evidence was when the state was telling them their interpretation of what it was. And to ensure that the verdict was going to be based on actual evidence, that footage needed to go back. Furthermore, the defense doesn't argue about whether or not the drugs was a certain quantity that it could have been sold. Really, this is about identity and whether or not Mr. Miles was there. The arguments about drug dealing here, the problem with the state's argument is that they actually made arguments about the very small bits of evidence known about Mr. Miles to suggest that those things made it look like he was a drug dealer, apart from the evidence in this case, that he was a drug dealer, which made it more likely that he was the person in the footage. So that's what made the prosecutor's argument about him being a drug dealer improper. Finally, when it comes to Officer Webb, or excuse me, when it comes to Webb being called as a witness, the state's argument that they would have, the defense counsel would have been ineffective for failing to call her at all, is really belied by the reality that the letter that she wrote had the wrong year on it. And we know that in her testimony, she's blowing with the wind and saying whatever it seems like she thinks is going to be helpful, but is also trying to look credible. Her whole testimony ended up casting a negative light on Mr. Miles because it made it look like he was throwing a witness up there that was just going to say whatever she needed to say to help him, and then ultimately completely botched the alibi. This all should have been foreseen by defense counsel and defense counsel, excuse me, may I conclude my thought? Yes. Defense counsel also did not bring up her testimony at all in the closing argument, so it was not a sound strategy. Thank you. Okay, thank you. Justice Schiller, any questions? No questions. Justice Welch? No questions. Okay. All right. Well, thank you both for your briefs in this matter, as well as your arguments today. They were all enlightening for us. We will take the matter into consideration and issue our ruling in due course.